

# NUMBER 13-13-00141-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**NOE LOSOYA,**                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

---

### On appeal from the 197th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Noe Losoya appeals his convictions for burglary of a habitation, enhanced to a first-degree felony, and for theft of a vehicle, a state-jail felony. *See* TEX. PENAL CODE ANN. §§ 30.02(d), 31.03(e)(4)(A) (West, Westlaw through 2013 3d C.S.). A jury convicted appellant of both offenses, and the trial court assessed punishment at fifty years' imprisonment for the burglary charge, and two years in state jail for the theft charge, the sentences to run concurrently. By three issues, appellant argues: (1) the State

committed prosecutorial misconduct by allegedly vindictively filing a notice of enhancement after appellant refused to accept the State's plea offer; (2) the trial judge allegedly vindictively assessed a harsher sentence because appellant did not accept the State's plea offer; and (3) the trial court erred in admitting a photo lineup.   We affirm.

## I.  BACKGROUND

### A.  Factual Background

Casimiro Campos was awakened at three in the morning by a knock on the front door of his mother's house.   Looking through the window, Campos recognized a juvenile from his neighborhood standing outside the door.   When Campos opened the door, appellant, who was hidden from view, punched Campos in the mouth as four men, including appellant and the juvenile, entered the home.   Appellant was armed with a knife and the juvenile was armed with a club.   While appellant and another intruder punched and choked Campos, the other two men entered Campos's mother's bedroom and woke up Campos's mother and her two-year-old son, demanding money and gold.   Appellant stole a Sony PlayStation 3 video game console and MP3 music player from the home, and left in Campos's car.   When the police responded to the home invasion, Campos gave officers a description of his stolen car.

Officer Lorenzo Rozalez was responding to a call about a vehicle disturbance when he saw appellant walking down the street and away from a wrecked car.   Appellant had a bloody wound on his forehead.   When Rozalez commanded appellant to stop, appellant ran into a residential backyard where he was caught by Rozalez after a brief chase.   Prior to his apprehension, appellant threw a sweatshirt into the backyard.

2

Rozalez recovered the sweatshirt and found a debit card belonging to Campos and a MP3 player inside a pocket of the sweatshirt.

Officer Rozalez arrested appellant and took him to jail before transporting him to a hospital for the treatment of his wounds. Based on appellant's possession of Campos's debit card, police connected appellant to the burglary. The next day, Detective Julian Ramirez interviewed appellant. During the interview, appellant stated he was present at Campos's house with three other men, but that he did not go inside the house. Appellant admitted he drove away in Campos's car after another intruder tossed him the keys and that he later wrecked the car in the woods.

**B.      Procedural Background**

On October 1, 2012 the trial court called appellant's case for announcements and both the State and appellant announced ready for trial. During the hearing, the trial court heard the following from appellant's trial counsel:

> We have reviewed the videos that they have, which include my client's statement and victims' recorded statements. Myself and the prosecutor explained to [appellant], because of his prior felony record, that he could be enhanced, and if he's found guilty of all the charges on the indictment, he's looking at a 15-year minimum sentence all the way up to life in prison. I've explained that to him and I believe he understands that. He's not guilty of these charges and wishes to go to trial understanding what he is looking at. The State on Friday and, it's my understanding, up until today is leaving open the offer of 15 years on a plea agreement. They have informed me that if we go to trial, that they will be asking the jury for no less than 40 years and maybe even as much as 60 years. My client this morning has told me he is not pleading guilty, he didn't do this, and we are requesting we be reset for trial. I would like my motion to suppress set even the day of— just before the trial begins, and that suppression is on his video recorded statement.

On October 18, 2012, the trial court held another hearing on the case. During the hearing, the following exchange occurred:

3

[State]: —for the record, all deals are off with Mr. Losoya. And from this point on, the State will be seeking whatever they can get for this offense and no deals will be followed from this point.

[Defense]: So we can be clear, Your Honor, what I've relayed to my client is that the State is offering him 12 years TDC on all of these charges. I've explained to him that because of his prior record, that legally, the minimum he is looking at, if convicted, is 25 years, and from there, it can only go up, but it will not go below 25 years. As long as he understands that after today, there is no more deals on the table, like [the State] said, and we will go to trial. And if he is convicted, there will be a sentence of at least 25 years.

On October 19, 2012, the State filed its Notice of Intention to Seek Enhancement of Punishment based on appellant's previous conviction of burglary of a habitation.

During the trial, the State introduced State's Exhibit No. 1, a six-person photo lineup wherein Campos identified appellant as one of the persons that committed the home invasion. Campos testified at trial that he circled appellant in the photo and initialed it, reflecting that he identified appellant as a person who entered his home.

After the jury found appellant guilty, the trial court ordered a presentence investigation report. During sentencing, the trial court reviewed the report and discussed appellant's lengthy criminal history. After its review, the trial court sentenced appellant to fifty years for count one and two years in state jail for count two.

## II. ALLEGATION OF PROSECUTORIAL MISCONDUCT AND JUDICIAL VINDICTIVENESS

Because they are closely related, we address appellant's first and second issues together. By his first issue, appellant claims that because he did not accept the State's plea offer, the State vindictively filed a notice of enhancement which amounts to prosecutorial misconduct. By his second issue, appellant argues that "[w]hile the plea offer should not create a sentence ceiling, the trial court must justify any substantially

4

harsher sentence, or vindictiveness will be presumed, requiring reversal. . . ."  Appellant further argues that the trial court can be held to a presumption of vindictiveness standard if the record does not affirmatively show that a substantially harsher sentence than that initially offered by the State is justified based on the facts of the offense and the criminal history of the defendant.[1]

## A.    Preservation of Error

Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion.  *See Archie v. State,* 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) (citing *Jones v. State,* 942 S.W.2d 1, 2 n. 1 (Tex. Crim. App. 2007) (en banc)).    An appellant generally waives claims of judicial and prosecutorial vindictiveness by failing to object at trial.   *See Neal v. State*, 150 S.W.3d 169, 180 (Tex. Crim. App. 2004) (en banc) (holding that because defendant never presented his prosecutorial vindictiveness claim in the trial court, he failed to preserve this issue for appellate review); *see also Harris v. State*, 364 S.W.3d 328, 336–37 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that defendant failed to preserve his judicial vindictiveness claim because he did not object to sentence or otherwise raise a claim of judicial vindictiveness in trial court).

## B.    Analysis

Appellant asserts that his punishment was enhanced because he did not accept the State's plea offer.  As evidence, appellant points to the pre-trial hearing held on October 18, 2012, where the State informed the trial court that "all deals are off."   True

---

[1] Appellant has not identified any other examples of alleged vindictiveness in the record.

to its word, the State filed the notice of enhancement the following day.[2]   The filing was not met with objection.  The trial court held two subsequent pre-trial hearings, during which appellant did not raise any objection to the State's enhancement of punishment. During trial, appellant did not make any objection regarding the intended enhancement or that the enhancement somehow constituted prosecutorial misconduct.

During the punishment phase, defense counsel requested that the court "consider the fifteen years, that that amount of time will meet the ends of justice."   The State introduced certified copies, without objection, of appellant's prior convictions of burglary of a habitation and possession of a controlled substance.   The trial court thereafter noted appellant's "lengthy" criminal history, including a prior burglary conviction, and sentenced appellant to fifty years' in prison.   Appellant did not object that this sentence was greater than the trial court's earlier plea offer, nor did he make any argument that the sentence was indicative of judicial vindictiveness.   Lastly, appellant failed to make any argument regarding prosecutorial misconduct and judicial vindictiveness in his motion for new trial and motion in arrest of judgment.   Therefore, we conclude that appellant failed to preserve his complaints for review on appeal because appellant failed to object to the perceived prosecutorial misconduct and judicial vindictiveness in the trial court.   See *Neal*, 150 S.W.3d at 180; *Harris*, 364 S.W.3d at 336–37.

Even assuming appellant's claims of prosecutorial misconduct and judicial vindictiveness are preserved, his argument on the merits fails.   Specifically, appellant

---

[2] Appellant asserts in his brief that "nothing in the record reflects any notice to [appellant] prior to his rejection of the plea agreement." We disagree. The record indicates that appellant had ample opportunity to consider and reconsider the ramifications of refusing the State's plea offer, including the possibility of punishment enhancement. The trial didn't commence in this matter until January 28, 2013, more than 15 months later.

argues that the State's enhancement of appellants charge was done to punish appellant for exercising his right to a jury trial. Appellant further argues that any significantly greater sentence imposed after a rejected plea offer creates a presumption of judicial vindictiveness. Appellant's arguments are unpersuasive.

During the pre-trial hearing on October 1, 2012, appellant's defense counsel informed the trial court that appellant was advised of the potential risks of rejecting the State's plea offer, including the risk of enhancement. Moreover, the State left its offer open, indicating that, at least as of October 1, 2012, plea negotiations were still ongoing. It was not until the hearing on October 18, 2012, that the State informed the trial court that plea negotiations had ended. The record reflects that appellant was aware of the consequences of rejecting the State's plea offer, and that he was advised by his trial attorney about the possibility of enhancement prior to the filing of the notice of enhancement. *See Ehl v. Estelle*, 656 F.2d 166, 172 (5th Cir. 1981) (finding no prosecutorial or judicial vindictiveness although sentence imposed on conviction following discretionary withdrawal of plea was greater than that imposed pursuant to plea, defendant was aware of price of rejecting the offer that was communicated to defendant and his attorney in initial plea bargaining stages); *Castleberry v. State*, 704 S.W.2d 21, 29 (Tex. Crim. App. 1984) (en banc) (explaining that the genesis of the requirement that a defendant be aware of the price of rejecting the bargain in cases involving allegations of prosecutorial vindictiveness).

Appellant's reliance on *North Carolina v. Pearce* and *Blackledge v. Perry* is misplaced. In *Pearce*, the Supreme Court held that a defendant must not be penalized for asserting his right to a *new trial* by the imposition of a longer sentence than he received

at the *first trial*. *See North Carolina v. Pearce*, 395 U.S. 711 (1969). That case was limited by *Alabama v. Smith*, 490 U.S. 794, 803 (1989), where the Supreme Court found that there is no presumption of vindictiveness where a second sentence imposed after a new trial is greater than the first sentence imposed after the entry of a guilty plea.

In *Blackledge*, the Supreme Court delineated a very narrow due process violation extant in prosecutorial vindictiveness exhibited by a felony indictment after a convicted defendant pursued his statutory appellate remedy of trial de novo. *See Blackledge v. Perry,* 417 U.S. 21, 28 (1974). In *Bordenkircher*, however, the Supreme Court held that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

Appellant failed to preserve his complaints of prosecutorial misconduct and judicial vindictiveness for appeal, and, moreover, was given ample opportunity to accept or reject the plea offer after an explanation of the consequences. We overrule appellant's first and second issues. *See* TEX. R. APP. P. 33.1; *Bordenkircher,* 434 U.S. at 363; *Ehl,* 656 F.2d at 173; *Castleberry*, 704 S.W.2d at 28.

### III. PHOTO LINEUP

By his third issue, appellant complains that the trial court erred by admitting a photo lineup.[3] Specifically, appellant argues "that the trial court violated appellant's Sixth

---

[3] Appellant argues in a sub-issue that the trial court improperly admitted the music on the MP3 player into evidence. During the trial, appellant elicited testimony about the song titles on the player, presumably to question whether Campos owned the MP3 player. Appellant, however, later stipulated that the MP3 player found in appellant's possession, belonged to Campos. Therefore, any argument about the songs on the player, as they relate to ownership of the player, is irrelevant.

Amendment right to present a complete defense because it allowed the State to introduce evidence without establishing a proper foundation."

## A.     Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.   *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge.").   We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement.   *Torres*, 71 S.W.3d at 760; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (holding that trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree").   In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it.   *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).   We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling.   *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## B.     Applicable Law

Texas Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."   TEX. R. EVID. 901(a).   This rule "does not require the State to prove anything."   *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd) (emphasis in original); *see also Silva v. State*, 989 S.W.2d 64, 67–68 (Tex. App.—San Antonio 1998, pet. ref'd)

(holding same). Instead, the rule "requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible." *Garner*, 939 S.W.2d at 805. Evidence may be authenticated or identified by different methods, including testimony from a witness with knowledge that an item is what it is claimed to be. TEX. R. EVID. 901(b)(1); *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd); *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

## C. Analysis

Appellant objected to the introduction of the State's photo-lineup exhibit, stating that Campos could not authenticate it. In his brief, appellant fails to argue or explain with proper legal authority how Campos was unable to authenticate the exhibit, or how the admission of the exhibit was erroneous. Instead, appellant generally urges that the introduction of the photo lineup denied appellant of his fundamental constitutional right to present a meaningful defense.

The record shows the trial court properly admitted the exhibit. Campos identified State's Exhibit 1 as the photo-array shown to him by a Brownsville police officer, and he identified his signature next to the picture that he selected. See *Mendoza v. State,* 69 S.W.3d 628, 631 (Tex. App.—Corpus Christi 2002, pet. ref'd) (witness may authenticate exhibit by testifying he saw exhibit at earlier time and recognized it by a distinctive characteristic). This testimony is sufficient to satisfy to the trial court that the exhibit was what the State claimed it to be—the photo-array shown to Campos. *See* TEX. R. EVID. 901; *Garner*, 939 S.W.2d at 805.

10

Appellant argues that the admission of the photo lineup in this case amounts to constitutional error, and cites *Potier v. State* in support of his argument. See 68 S.W.3d 657 (Tex. Crim. App. 2002) (en banc). We disagree. In *Potier*, the trial court *excluded* testimony that arguably would have supported defendant's self-defense claim. *Id.* at 658. The Court of Criminal Appeals held that "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 665. *Potier* did not contemplate the *admission* of evidence and its facts are inapposite.

The trial court did not abuse its discretion in admitting the photo lineup. We overrule appellant's third issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of February, 2015.

11